**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Shirley A. Drossman, | : | Case No. 3:07CV00376 |
|     Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
|     Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' briefs on the merits and Plaintiff's Reply (Docket Nos. 14, 17 and 18). Based upon the evidence that follows, it is recommended that the decision of the Commissioner be remanded pursuant to sentence four of 42 U.S.C. § 405(g) and the referral to the Magistrate be terminated.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for supplemental income on May 15, 2000 (Tr. 570). On May 24, 2000, Plaintiff applied for DIB alleging that she had been disabled since February 16, 2000 (Tr. 82-84). Her request for benefits was denied initially and upon reconsideration on February 12, and July 30,

2001, respectively (Tr. 41-44, 46-49). On June 12, 2003, Plaintiff, represented by counsel, and Vocational Expert (VE) Joseph Havrenack appeared at a hearing (Tr. 509). The ALJ rendered an unfavorable decision on February 23, 2004 (Tr. 12-14, 15-25). The Appeals Council denied Plaintiff's request for review of the February 23rd denial on July 9, 2004 (Tr. 6-8).

Plaintiff filed a timely action seeking judicial review of the Commissioner's final decision rendered on July 9, 2004. Magistrate Judge Nancy Vecchiarelli affirmed the Commissioner's final decision on September 13, 2005 (Tr. 585-602). Judge Patricia A. Gaughan reversed and remanded the case to the Commissioner on November 3, 2005 (Tr. 603-610). The Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ to offer an opportunity for hearing, to complete the administrative record and issue a new decision (Tr. 613).

ALJ Morley White conducted a hearing on April 18, 2006. Plaintiff, represented by counsel, appeared and testified (Tr. 785). On September 28, 2006, ALJ White rendered a decision finding that Plaintiff was not disabled (Tr. 562-570). The Appeals Council denied Plaintiff's request for review on December 12, 2006 (Tr. 537-540). Plaintiff filed a timely civil action in this Court on February 6, 2006 (Docket No. 1).

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

At the initial hearing conducted on June 12, 2003, Plaintiff testified that she resided alone and that she had graduated from high school (Tr. 513-514). Plaintiff receives monthly benefits of $115 (Tr.

525). In providing her employment history, Plaintiff testified that her most recent job was for the Lear Corporation. Her duties included supplying soft drinks for vending machines and loading onto and unloading flats of soda from warehouse trucks. She lifted fifty pounds and worked up to thirteen hours a day, seven days each week (Tr. 514). She previously worked as general manager for a dollar store. She hired and fired personnel, supervised about eight employees, unloaded trucks, maintained invoices and worked ten-hour days (Tr. 515). Plaintiff also managed a gas station, and her duties included hiring and firing personnel and stocking the coolers (Tr. 517).

Plaintiff suffered from insulin-dependent diabetes mellitus and peripheral neuropathy in her feet and legs (Tr. 517, 518). She injected herself with insulin twice daily. Her legs cramped and her feet burned. She had not worn shoes for more than one year (Tr. 518). Because of these limitations, she was unable to stand for eight hours per day (Tr. 519).

In February 2006, Plaintiff suffered a myocardial infarction (Tr. 520). At the time of the hearing, Plaintiff still had symptoms such as chest discomfort and pain in her left arm (Tr. 521). She was diagnosed with carpal tunnel syndrome on the right side. Her hands cramped, tingled and became numb. Plaintiff took Motrin for pain and wore a brace for stability (Tr. 522).

Plaintiff admitted that she had episodes of depression. She was prescribed medication to treat the symptoms (Tr. 523). She was working to overcome her nicotine addiction (Tr. 523, 524).
She was persistently fatigued causing her to spend up to twelve hours daily lying down (Tr. 519-520). She did, however, vacuum, shop and clean. Her meals included cereal and microwavable meals (Tr. 526). Plaintiff could drive (Tr. 527). Plaintiff estimated that she could stand for two hours and sit for two hours (Tr. 527).

VE Havrenack testified that Plaintiff performed her past relevant work on the medium exertional

level. Her job performance as store and gas station managers was characterized at the light level of exertional work. Her work as a vending machine attendant was considered light and unskilled labor (Tr. 528).

Plaintiff's ability to direct others, deal with individual and groups, interpret procedures, prepare budgets and maintain inventory was transferrable. The sedentary jobs that would use these skills included order, appointment and billing clerk. There were up to 2,500 order clerk positions, up to 2,500 appointment clerk positions and approximately 2,000 billing clerk positions that Plaintiff could perform (Tr. 529). The transition to these positions would not require more than ninety days (Tr. 530).

If Plaintiff were assigned to perform work that did not require use of her hands, she could perform work such as microfilm document preparer, surveillance system monitor and charge account clerk. There were 500, up to 1,500 and 500, such positions, respectively. These jobs would accommodate a sit/stand option; however, this work would be precluded if the hypothetical claimant were required to sleep eight to ten hours daily (Tr. 530-531). If the hypothetical plaintiff were limited to standing and walking less than two hours in an eight-hour work day and limited to sitting for two hours or less in an eight-hour workday, he or she could not perform any of the jobs recommended by the VE (Tr. 531). If the hypothetical plaintiff were limited to performing simple repetitive tasks and had moderate limitations with respect to stress, the hypothetical plaintiff could still perform work as an order, appointment and billing clerk (Tr. 532-534).

At the supplemental hearing on April 18, 2006, Plaintiff testified that she received Social Security Disability Insurance and Medicaid benefits (Tr. 791). Medicaid did not cover psychological counseling so Plaintiff did not pursue treatment for depression (Tr. 790-791). Plaintiff had tried medical intervention to quit smoking but she was unsuccessful. She had reduced, however, her cigarette smoking

4

to one half pack daily (Tr. 790, 822). She had last seen her cardiologist approximately eight months prior to the hearing. He had prescribed exercise; however, Plaintiff's problems with her feet and legs and her inability to wear shoes interfered with her attempts to exercise (Tr. 792).

Plaintiff's treating physician recommended seasonal employment at Cedar Point until he realized that the side effects of her medication included lethargy (Tr. 815, 816). Plaintiff considered the fact that she had to wear a brace indicative of the severity of her carpal tunnel syndrome (Tr. 817). The nerves in Plaintiff's hands deteriorated and her blood sugar level was uncontrolled (Tr. 818). Her depression continued as did her inability to concentrate or deal with people (Tr. 821).

## **MEDICAL EVIDENCE**

### *1999*

Dr. John C. Payne suspected that Plaintiff had a mild degree of carpal tunnel syndrome in November. He recommended conservative therapy with anti-inflammatory medications and splinting (Tr. 465).

### *2000*

On February 16, Dr. M. Traboulssi interpreted the results of a Doppler study and determined that Plaintiff's four valvular structures showed no significant flow abnormality and there was no active pulmonary pathology (Tr. 154, 165, 175). Plaintiff's obstructed blood vessels were surgically widened (Tr. 171, 362).

In April, Dr. Traboulssi noted that Plaintiff suffered from a prolonged period of chest discomfort suggestive of coronary artery disease and ischemia. She had been prescribed beta blocker and nitrates. Although her symptoms were abated, the arteries continued to narrow and her diabetes and hyperlipidemia were poorly controlled (Tr. 222, 223).

In May, Plaintiff underwent a left heart catheterization which revealed coronary artery disease manifested by significant narrowing of the mid circumflex, mild disease of the right coronary artery and uncontrolled hyperlipidemia (Tr. 181). Later on May 12, Plaintiff underwent an angioplasty (Tr. 350). Plaintiff was treated for acute foot pain post cardiac catheterization (Tr. 217).

Plaintiff underwent another catheterization at the Cleveland Clinic on December 15. The results showed mild to moderate three vessel coronary artery diseases (Tr. 291). Dr. Christopher Bajzer recommended aggressive risk factor modification (Tr. 293).

*2001*

Plaintiff was referred to cardiac rehabilitation in January. In July the treatment nurse noted that Plaintiff had not appeared or called to reschedule (Tr. 260-262, 264, 266, 276).

In the meantime, in February, Dr. Michael R. Stock, upon reviewing the clinical and laboratory findings, symptoms, observations, evidence and reports, reasoned that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. Plaintiff was able to push and pull without restriction or limitation (Tr. 279). Concentrated exposure to extreme cold, heat and humidity was contraindicated (Tr. 282).

Dr. Darrin R. Bunting opined in May that Plaintiff's depression overshadowed her ability to care for her diabetes, coronary artery disease and smoking. He increased Plaintiff's antidepressant therapy (Tr. 311).

Dr. Sara M. Derrick, Ph. D., conducted a clinical interview on June 15, 2001 after which she diagnosed Plaintiff with depressive disorder, borderline intelligence, diabetes and a global assessment

of functioning (GAF) of 60-65[1]. Dr. Derrick opined that Plaintiff's mental ability to relate to others was moderately impaired by her low cognitive functioning and mild depression. Likewise, her mental ability to understand, remember and follow instructions was impaired by her low cognitive functioning. Her ability to withstand stress and pressures of day-to-day work activity was only moderately impaired (Tr. 367).

On July 14, Dr. Guy G. Melvin, Ph. D., diagnosed Plaintiff with a depressive syndrome but found no marked functional limitations (Tr. 370-371). Dr. Melvin did find that Plaintiff was moderately limited in her ability to understand and remember, carry out detailed instructions, maintain attention and concentration for extended periods or complete a normal workweek and workday without interruption (Tr. 372-373).

Plaintiff was diagnosed with purulent asthmatic bronchitis in September (Tr. 376). Her heart size was normal and her lungs were clear (Tr. 381).

*2002*

Dr. Don J. Young reviewed Plaintiff's systems in May and found that she was a noncompliant patient with: (1) insulin dependent diabetes mellitus, (2) a tobacco dependence disorder, (3) severe hyperlipidemia as a result of her insulin dependent diabetes mellitus, (4) heart disease due to diabetes mellitus, tobacco dependency and hyperlipidemia, (5) unstable angina due to the diabetes, tobacco dependence, hyperlipidemia and heart disease and (6) excessive body and facial hair (Tr. 395). During

---

[1] GAF measures social, occupational and psychological functioning. A score of 70-61 denotes some mild symptoms (ex: depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well; has some meaningful interpersonal relationships. A score of 60-51 denotes moderate symptoms (ex: flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational ,or school functioning (ex: few friends, conflicts with peers/co-workers). AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, GLOBAL ASSESSMENT OF FUNCTIONING SCALE, 4th ed., *Text Revision* (2000).

the stress test administered in May, Plaintiff had extensive chest pain behind her breastbone initiated when Adenosine was introduced into her body. When the Adenosine was withdrawn, Plaintiff's chest pain cleared (Tr. 401). The cardiolite stress test was normal with normal wall motion and ejection fraction (Tr. 404). There was no x-ray evidence of acute cardiopulmonary process (Tr. 402, 403).

Dr. Young opined in June that Plaintiff was employable. She could walk less than two hours in an eight-hour workday, stand/walk one to two hours, sitting two hours without interruption. Plaintiff was moderately limited in her ability to push/pull and engage in repetitive foot movements (Tr. 461). Dr. Young noted on August 29 that Plaintiff remained noncompliant with her diabetic diet and stopping smoking (Tr. 423). Dr. Young noted that if Plaintiff continued to be noncompliant, he would terminate their physician/patient relationship (Tr. 424).

The physical therapist evaluation undertaken on November 8, showed that Plaintiff was not capable of performing all critical demands of her job as a vending machine operator. She had a functional capacity for sedentary work (Tr. 443).

### *2003*

In January, Dr. Christopher Bajzer confirmed that Plaintiff had atherosclerotic coronary disease with several risk factors. He prescribed a medication to treat neuropathic pain (Tr. 452).

In April, Dr. Christian Nasr found that Plaintiff's diabetes was uncontrolled and her hypertension was benign (Tr. 454). He increased the dosage of insulin and recommended a low animal fat diet to lower cholesterol (Tr. 654).

Dr. Daniel Allan also increased the dosage of Plaintiff's insulin in April, noting that Plaintiff had been noncompliant with prescribed treatment for diabetes in February, April and May (Tr. 470, 478, 658, 684, 690). He adjusted the dosage of her insulin so that it was compatible with the insulin dosage

prescribed by Dr. Nasr (Tr. 684).

In August, Plaintiff's hypertension was well controlled; however, lifestyle changes were stressed to control her diabetes (Tr. 679). Dr. Bajzer found no evidence of transient defects indicative of myocardial ischemia or scar (Tr. 704, 715).

## *2004*

In January, Dr. Dhruv Patel observed small vessel ischemic changes. Dr. Patel prescribed an anticoagulant (Tr. 646).

In February, Dr. Darshan Mahajan confirmed that Plaintiff had cerebrovascular disease due to small vessel involvement. Plaintiff quit smoking but she complained of shoulder pain (Tr. 648).

In March, Dr. Mahajan observed the Plaintiff's shoulder pain had improved (Tr. 649).

In April, Dr. Melvyn Bucklan, a podiatrist, removed a plantar lesion from Plaintiff's right foot (Tr. 719).

In June, Dr. Edmond W. Gardner opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday, refrain from pushing and pulling using the upper extremities and avoid all exposure to hazards (Tr. 721, 723). She was limited in her ability to reach with her left hand only and balancing was contraindicated (Tr. 722).

Plaintiff underwent a clinical evaluation to evaluate her mental status in August, after which Dr. Marion Dunn diagnosed Plaintiff with major depression, diabetes, restless leg syndrome and a global assessment of functioning (GAF) of $40^2$ (Tr. 728).

---

[2] A score of 40 is indicative of some impairment in reality testing or communication (ex: speech is sometimes illogical, obscure, irrelevant) OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (ex: depressed man avoids friends, neglects family, and is unable to work). AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, GLOBAL ASSESSMENT OF FUNCTIONING SCALE, 4th ed., *Text*

In October, Dr. Cindy Lou Matyi, Ph. D., diagnosed Plaintiff with major depression and a depressive syndrome characterized by anhedonia, sleep disturbance, decreased energy, difficulty concentrating and thoughts of suicide (Tr. 753). As a result of these limitations, Plaintiff had a marked inability to complete a normal workweek and respond to the changes in the work station (Tr. 747). However, Plaintiff's ability to engage in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace was only moderately affected by her impairments (Tr. 760).

## **STANDARD OF DISABILITY**[3]

To establish entitlement to disability benefits, a claimant must prove that she or he is incapable of performing substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or to last for at least twelve months. *Murphy v. Secretary of Health and Human Services*, 801 F.2d 182, 183 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A)). The claimant must show that his/her impairment results from anatomical, physiological or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1513, 404.1528, 416.913, 416.928 (Thomson/ West 2008).

To determine disability, the ALJ uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson/West 2008). The ALJ considers: (1) whether the claimant is working and whether that work constitutes substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which meets or equals

---

*Revision* (2000).

[3] The standard for disability under both the DIB and SSI programs is substantially similar. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920 (1999). To assist clarity, the remainder of this Report and Recommendation references only the DIB regulations, except where otherwise necessary.

the durational requirements listed in Appendix 1 of Subpart P, Regulations No. 4, (4) whether the claimant can perform past relevant work, and (5) if the claimant cannot perform his/her past relevant work, then his/her RFC, age, education and past work experience are considered to determine whether other jobs exist in significant numbers that accommodate him/her. 20 C.F.R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson/West 2008).

A finding of disability requires an affirmative finding at step three or a negative finding at step five. The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. The ALJ's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e., sedentary, light, medium, heavy or very heavy work), in combination with an application of the Grid to determine whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2 (Thomson/West 2008).

## ALJ DETERMINATIONS

After consideration of the entire record, the ALJ made the following findings of fact after the hearing on remand:

1. Plaintiff met the insured status requirements of the Act through December 31, 2005.

2. Plaintiff had not engaged in substantial gainful activity since February 2000, the alleged onset date of her disability. Plaintiff had severe impairments including cardiovascular disease, diabetes with complications, carpal tunnel syndrome and depression. Plaintiff did not have an impairment or combination of impairments that met or was medically equal to one of the listing impairments in 20 C. F. R. Part. 404, Subpart P, Appendix 1.

3. Plaintiff had the residual functional capacity to perform a significant range of sedentary work. She retained the ability to occasionally and frequently lift and/or carry ten pounds provided there was sit/stand option. Plaintiff could sit for six hours in an eight-hour day, stand and/or walk for at least two hours in an eight-hour workday, push and/or pull in an unlimited fashion, climb balance stoop, kneel, crouch and crawl.

>Plaintiff had no manipulative limitations except that she could not constantly use her hands. She had no visual, communicative, or environmental limitations. She could perform unskilled, one and two-step processes provided she was not required to maintain sustained concentration.
>
>4. Plaintiff was unable to perform any past relevant work. However, Plaintiff, a younger individual, with a high school education, no transferrable skills and a residual functional capacity for sedentary work, could perform a significant number of jobs in the national economy.
>
>5. Plaintiff was not under a "disability" as defined in the Act at any time from February 16, 2000 through February 24, 2004.

(Tr. 566-570).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *McClanahan, supra*, 474 F.3d 830 at 833 (*citing Branham v. Gardner,* 383 F.2d 614, 626-627 (6th Cir. 1967)). In fact the Commissioner's findings as to any fact shall be conclusive if supported by substantial evidence. *Id.* (*citing* 42 U.S.C. § 405(g) ). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*citing Besaw v. Secretary of Health and Human Services,* 966 F.2d 1028, 1030 (6th Cir. 1992)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* (*citing Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)). Therefore the reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir.

12

1989); *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984)).

## DISCUSSION

Plaintiff contends that the (1) jobs the VE identified that she can perform require a level of understanding that exceeds her capacity (2) testimony of the VE does not constitute substantial evidence since the hypothetical question did not accurately reflect her limitations, and (3) ALJ failed to consider the entire record.

Defendant contends that the (1) it is clear that the VE did not rely on the DOT as support for his testimony regarding numbers of jobs in the economy, (2) omission from the hypothetical question was not significant; and (3) new evidence was not relevant to the time period considered by the ALJ so the ALJ appropriately did not consider this evidence.

1.

The hypothetical posed to the VE considered a limitation to "simple, repetitive" work. The ALJ did not ask the VE to consider what jobs, if any, were available to Plaintiff if she were limited to work involving one and two step processes. However, the ALJ made the following finding:

> [S]he can occasionally and frequently lift and/or carry ten pounds. She requires a sit and stand option. She can sit for about six hours in an eight-hour workday and can stand and/or walk for at least two hours in an eight-hour workday. She can push and/or pull in an unlimited fashion. She can climb, balance, stoop, kneel, crouch, and crawl. She has no manipulative limitations except that she cannot constantly use her hands. Her strength is within normal limits. She has no visual, communicative, or environmental limitations. *She can perform unskilled one and two-step processes*. She is capable of simple, repetitive work that does not require sustained concentration.

Defendant contends that the phrases "unskilled one- or two-step processes" and "simple, repetitive work that does not require sustained concentration" are synonymous. The omission of the phrase "unskilled one or two step processes" is, at most, harmless error. In support Defendant refers to *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (no principle of administrative law or common

13

sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result. *Illinois v. I.C.C.,* 722 F.2d 1341, 1349 (7th Cir. 1983); *Busboom Grain Company v. I.C.C.,* 856 F.2d 790, 796 (7th Cir. 1988); *Erie-Lackawanna R.R. v. United States,* 279 F.Supp. 316, 354-55 (S.D.N.Y.1967), *aff'd with modifications, and remanded, sub nom. Penn-Central and N. & W. Inclusion Cases,* 88 S.Ct. 602 (1968) (Friendly, J.)).

The Magistrate finds that the jobs to which the VE referred were derived from the *DICTIONARY OF OCCUPATIONAL TITLES (DOT)* and subsequently identified by the VE as compatible with Plaintiff's impairments. The ALJ, in turn, relied on *DOT* for determining the jobs in the economy that Plaintiff, despite her limitations, could perform. In fact, the VE cited specific sections that correspond with the recommended jobs. These jobs, however, are not consistent with the ALJ's finding that Plainitff is limited to sedentary work that she can perform implementing one and two step processes.

In *DOT* jobs are classified by selected characteristics and auxiliary profile data that embraces aspects of education that are required for a worker to perform satisfactorily. *DOT*, 1991 WL 688702 (4th ed. 1991). Reasoning development is one of three divisions that measure reasoning, mathematical and language development. *Id.* Level one suggests that the claimant can only apply commonsense understanding to carry out simple one or two step instructions, deal with standardized situations with occasional or no variables in or from these situations encountered on the job. In contrast, a claimant that can function at level three can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, deal with problems involving several concrete variables in or from standardized situations. *Id.*

The ALJ adopted ALJ VerWiebe's finding that Plaintiff could perform work as a microfilm preparer, surveillance system monitor and charge account clerk (Tr. 569). However, the microfilm

preparer, surveillance system monitors and charge account clerk positions require that the employee has a level three ability to reason. In this case, the ALJ found that Plaintiff was only capable of performing work that entails a level one ability to process. The VE's recommendations of jobs that exist in the economy that will accommodate her residual functional capacity are not consistent with the abilities and/or limitations imposed by the ALJ. This inconsistency suggests that the Commissioner failed to sustain the burden at step five of the sequential evaluation. Remand in this case may not result in a perfect opinion or different result; however, the ALJ bears the burden at step five of the sequential evaluation to address whether there are jobs in significant numbers that will accommodate Plaintiff's residual functional capacity. In this case, the Commissioner failed to sustain this burden.

2.

Plaintiff argues that the VE's testimony does not constitute substantial evidence probative of the proof required to sustain the burden at step five of the sequential evaluation since the hypothetical question did not accurately reflect her limitations.

Substantial evidence may be produced through reliance on the testimony of a VE in response to "hypothetical" question, but only if the question accurately portrays the claimant's individual physical and mental impairment. *Culbertson v. Barnhart,* 214 F. Supp.2d 788, 798 (N. D. Ohio 2002) (*citing Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)).

The Magistrate finds that the ALJ's questioning of the VE did not accurately portray the Plaintiff's impairments. There was a glaring omission from the hypothetical question that diminished the probative value of the response. In particular, the ALJ failed to inquire about Plaintiff's limited ability to perform one and two step processes. The responses did not include this limitation to Plaintiff's residual functional capacity. On remand, the ALJ will inquire of the VE to the extent necessary to

15

sustain the burden of proof required at step five of the sequential evaluation.

3.

Finally, Plaintiff argues that the ALJ failed to consider the entire record before him. Specifically, the ALJ followed the remand order and did not review any evidence that was not part of the evidence reviewed by the prior ALJ or that new evidence was sufficient to warrant an award of benefits.

The ALJ shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order. 20 C. F. R. § 404.977 (Thomson/West 2008). In this case, the Appeals Council *vacated* Judge VerWiebe's decision and remanded the case for consideration of proceedings consistent with Judge Gaughan's decision but not to the exclusion of other relevant medical evidence. The Appeals Council ordered the ALJ to take any further action that was required to complete the record and issue a new decision.

The Magistrate finds the ALJ's decision to concentrate solely on Dr. Young's decision is contrary to the order of the Appeals Council and the ALJ's duty to look fully into the issues as required under 20 C. F. R. § 404.944. Concentration on the medical evidence provided by Dr. Young alone prevented a fair review of Plaintiff's application for disability. This case is remanded to fully and fairly develop the record, notwithstanding the directives to sustain the burden at step five of the sequential evaluation. The ALJ must then make a disability determination observing the relevant process of evaluation and considering all of the relevant evidence in the record.

## **CONCLUSION**

For the foregoing reasons, the Magistrate recommends that the Commissioner's decision be remanded pursuant to sentence four of 42 U.S.C. § 405(g) and the referral to the Magistrate be terminated.

16

                                         <u>/s/Vernelis K. Armstrong</u>
                                         United States Magistrate Judge

Dated: February 12, 2008

## **<u>NOTICE</u>**

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S.Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.