IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shirley A. Drossman,  Case No. 3:07CV00376

      Plaintiff,

v.  ORDER

Commissioner of Social Security,

      Defendant.

In this appeal, I review defendant Commissioner of Social Security's [Commissioner] final decision denying plaintiff Shirley A. Drossman's claim for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d). Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

Drossman objects to the Magistrate Judge's Report and Recommendation [Magistrate's Report] and requests that I reverse the Commissioner's decision rather than remand. [Doc. 21]. For the following reasons, I adopt the conclusions of the Magistrate's Report and remand the case to the Commissioner of Social Security for further consideration consistent with this opinion.

**Factual Background**

Because numerous decisions have laid out the facts supporting Drossman's applications to the Social Security Administration, I only briefly describe the information here.

Plaintiff has a high school education and held numerous jobs previous to her first application for benefits, including positions as general manager for a dollar store, grocery store clerk, and gas

station manager. Most recently she supplied soft drinks to vending machines for the Lear Corporation.

Since approximately 1991, Drossman has suffered from insulin dependant diabetes mellitus and peripheral neuropathy in her feet and legs. In addition to requiring her to inject herself with insulin, these diseases caused her to be unable to stand for eight hours a day. In February, 2000, at the age of 41, plaintiff suffered a heart attack which revealed significant multi-vessel coronary artery disease. Subsequent hospital visits resulted in an angioplasty and the insertion of a stent.

Doctors who conducted examinations in the following months noted the extent of the plaintiff's medical problems and the degree to which it would limit her work. They also, however, noted that she was noncompliant in caring for her diabetes and coronary artery disease. Drossman's depression complicated matters and, on June 28, 2001, her doctor sent her for a clinical evaluation where examiners diagnosed her with a depressive disorder not otherwise specified and a global assessment of functioning [GAF] of 60-65.[1]

Hospital visits in the following years revealed that the plaintiff continued to suffer from multiple impairments and struggle in her efforts to treat those impairments. For example, while Drossman took Zoloft for her depression, the medication contributed to her constant fatigue. In November, 2002, an occupational therapist and a physical therapist conducted a physical capacity evaluation. They noted that Drossman could not stand or walk for more than two hours and only had a functional capacity for sedentary work. Plaintiff points out, however, that the therapists did not test Drossman's ability to sit.

---

[1] GAF measures social occupational and psychological functioning. A score of 61-70 denotes some mild symptoms (e.g. depressed mood and mild insomnia) or difficulty in social, occupational, or school functioning, but generally indicates that the evaluee is functioning.

Plaintiff's problems with low energy and diabetes continued in 2003, and by early 2004 she suffered from, among other things, a right cerebral TIAs with diffuse cerebrovascular disease, hyperlipedimia, insulin dependent diabetes mellitus type II, depression, hypertension, coronary artery disease, carpal tunnel syndrome, and chronic obstructive pulmonary disease.

## Procedural Background

Drossman filed an application for supplemental income on May 15, 2000, and an application for disability insurance benefits on May 24, 2000, both alleging disability since February 16, 2000. The Social Security Administration denied her initial request and her request for reconsideration on February 12, 2001 and July 30, 2001, respectively. After these denials, Administrative Law Judge [ALJ] Richard C. VerWiebe heard Drossman's claim and, on February 23, 2003, found that Drossman: 1) had not engaged in substantial gainful activity since the alleged onset of disability; 2) suffered from severe "cardiovascular disease, diabetes with complications, carpal tunnel syndrome, and depression impairments"; and 3) was unable to perform her past relevant work. He decided, however, that Drossman was not eligible for benefits because there were "a significant number of jobs in the national economy that she could perform." (R. at 23-24.) On July, 9, 2003, the Social Security Administration Office of Hearing and Appeals [the Appeals Council] denied Drossman's request for review, making ALJ VerWiebe's opinion the Commissioner's final decision.[2] (R. at 6.)

---

2

While Drossman awaited a decision from the Appeals Council regarding her initial appeal of ALJ VerWiebe's decision, she filed another application for benefits. Shortly after the Appeals Council declined to review the ALJ's decision, the Commissioner granted Drossman's second application for benefits, finding her disabled from February 24, 2004. Much of the evidence the plaintiff wanted to present on remand was evidence that was part of this second application. I make no finding as to whether this additional evidence is applicable to the period covered by this application.

Plaintiff then sought judicial review of the Commissioner's decision, leading to Magistrate Judge Nancy Vecchiarelli's September 13, 2005 Report and Recommendation affirming the Commissioner.

District Judge Patricia A. Gaughan accepted in part and rejected in part Magistrate Vecchiarelli's report. Explaining her decision, Judge Gaughan felt that the ALJ misconstrued the conclusions of one of the plaintiff's doctors, (R. at 606-07) and failed to articulate a basis for not accepting the portion of that doctor's opinion that the ALJ inherently rejected through his misconstrual. (R. at 607-08 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) for the rule that an ALJ must articulate a basis for rejecting opinions of the plaintiff's doctor).) Therefore, Judge Gaughan remanded the case "to the Commission of Social Security for further consideration consistent with this opinion." (R. at 610.)

Receiving the case from the district court, the Appeals Council issued a one page opinion, which served to "vacate[] the final decision of the Commissioner of Social Security and remand[] this case to an Administrative Law Judge for further proceedings consistent with the order of the court." (R. at 613.)

On remand, ALJ Morley White held a hearing on April 18, 2006**.** At the hearing, the ALJ expressed his frustration with what he later described as "the inconsistencies presented by conflicting orders from the district court and appeals council." (R. at 563.) ALJ White decided that Judge Gaughan's limited justifications for remand, and the Appeals Council's remand "consistent with the order of the court," required him to limit himself "to the issues [the district court] found in question and not disturb the remainder of the court's decision affirming Judge VerWiebe." (R. at 565.) Examining those issues, ALJ White found that they did not change the previous decision that

4

Drossman was not eligible for benefits for the period in question.

Drossman sought review in this court on February 9, 2007. Under Local Rule 72.2(b), the Clerk referred the case to the Magistrate who issued a Report. The Report recommends that I reverse and remand the ALJ's decision. Drossman objects, arguing that I should reverse and grant benefits.

**Standard of Review**

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record supports the findings, and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). I "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson*, *supra,* 402 U.S. at 401); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. 42 U.S.C. § 405(g) (1998); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).[3]

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, *supra,* 889 F.2d at 681 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

---

[3] I also must make a de novo determination of the portions of the Magistrate's Report to which Drossman objects. 28 U.S.C. § 636(b)(1). It is essential to note, however, that I am not limited to reviewing those portions of the Magistrate's Report to which one or more of the parties object. "[L]ack of objections to a magistrate's report and recommendation does not eliminate the district court's obligation to determine whether to accept the recommendation." 91 C.J.S. *U.S. Magistrates* § 9 (2008).

(1938)). In determining whether substantial evidence in support exists, I will view the record as a whole, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

**Discussion**

This case comes to me from a complicated procedural background which has resulted in my reviewing portions of two different hearings and related "final decisions." In the first hearing, ALJ VerWiebe posed a hypothetical question to the vocational expert [VE] about whether an "individual capable of performing simple repetitive work that doesn't involve sustained concentration" could perform the available unskilled sedentary jobs listed by the VE. The ALJ relied on the VE's answer to this question to find "there are a significant number of jobs in the national economy" that plaintiff could perform. (R. at 24 (containing ALJ's findings).) The plaintiff alleges, however, that the ALJ's statement that "[t]he claimant can perform unskilled one and two-step processes" undermines this finding of fact and leaves unmet the Commissioner's burden of showing other jobs that the plaintiff could perform exist in significant number in the national economy. Plaintiff also challenges ALJ White's decision not to hear new evidence or reconsider issues from the VerWiebe decision that the district court had not disturbed on appeal.

**1. The ALJ Evaluation Process**

To establish entitlement to disability benefits, a claimant must prove that he or she "is unable to engage in any substantial gainful activity as a result of a medically determinable physical or mental impairment which can be expected to last for a period of at least twelve months." *Murphy v. Sec'y of Health and Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986) (citing 42 U.S.C. § 423

(d)(1)(A)). The claimant must also show that his or her impairment results from an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423 (d)(3); 20 C.F.R. §§ 404.1528, 416.913, 416.928.

To determine whether a claimant has a disability, the ALJ uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g) (applying the five step process to determine disability insurance benefits and supplemental security income, respectively). According to this process, the ALJ considers: (1) whether the claimant is working and whether that work constitutes substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the claimant has an impairment which meets or equals those on the list of impairments "presumed severe enough to render one disabled" including the duration requirements. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the Commissioner reaches an affirmative conclusion at step three, the claimant qualifies for benefits. *Id.*

If the impairment is not on the list (or does not meet the durations requirements), the analysis continues to step four (4), and the ALJ considers whether the claimant can perform past relevant work. *Id.* at 25. If the claimant cannot perform his or her past relevant work, step five (5) requires the ALJ consider "vocational factors" (e.g. age, education, past work experience) to determine whether the claimant is capable of performing other jobs that exist in significant numbers in the national economy. *See, e.g.*, *Id.*; 20 C.F.R. §§ 404.1520. A negative finding at step five results in a benefits award. 20 C.F.R. §§ 404.1520(g)(2).

The claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.

2003). The ALJ's analysis at step five typically involves an evaluation of the claimant's residual function capacity [RFC] to perform a category of work (i.e., sedentary, light, medium, heavy, or very heavy work), in combination with an application of the Medical-Vocational Guidelines [the Grids], a framework for determining in what employment a claimant of a certain RFC, age, education, and work experience could engage. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("After the Secretary determines that the plaintiff is incapable of performing past relevant work, these grids are used to determine whether plaintiff can perform other jobs in the national economy."); 20 C.F.R. Pt. 404, Subpart P, App. 2.

### 2. Availability of Jobs the Plaintiff Could Perform

Drossman claims that the statement in ALJ VerWiebe and White's decisions that Drossman "can perform unskilled one and two-step processes" (R. at 21 and 567) undermines the "significant number of jobs" finding in the VerWiebe opinion (R. at 24), leaving unmet the Commissioner's burden of showing other jobs that the plaintiff could perform exist in significant number in the national economy.

During Drossman's first hearing, ALJ VerWiebe asked the VE whether, if Drossman was "capable of performing simple repetitive work that doesn't involve sustained concentration," she would be capable of performing the unskilled jobs the VE listed in his previous testimony.[4] (R. at 534.) The VE answered in the affirmative, leading ALJ VerWiebe to cite the availability of those unskilled jobs to find: "12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work . . . there are a significant number of jobs in the national

---

[4]

The VE testified to the existence of: 500 microfilm document preparation jobs; 1,000 to 1,5000 jobs in surveillance systems monitoring; and 500 charge account clerk positions. (R. at 530.)

economy that [Drossman] could perform." (R. at 23-24.)

ALJ VerWiebe also noted "[t]he claimant can perform unskilled one and two-step processes." (R. at 21.) Yet the unskilled jobs listed by the VE and VerWiebe (microfilm document preparer, surveillance system monitor, and charge account clerk) involve more than one- and two-step instruction.[5] According to the Dictionary of Occupational Titles, a worker who performs at reasoning development scale level one has the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." Dictionary of Occupational Titles, Appendix I, 4th Ed., rev. 1991. Microfilm document preparer, surveillance system monitor, and charge account clerk are all reasoning level three positions. (R. at 547, 551, and 555.) Therefore, the ALJs' "one and two-step processes" conclusion appears to undermine the twelfth finding in the VerWiebe opinion.

The problem is compounded by ALJ White's reliance on the same inconsistent conclusions in his findings. (*See* R. at 567 (finding five stating "[Drossman] can perform one and two-step processes") and 569 (citing the availability of the same jobs as ALJ VerWiebe cited in his opinion).) This leaves the Commissioner unable to meet his burden of showing the claimant is capable of performing other jobs that exist in significant number in the national economy.

### 3. Review of the Entire Record

Pointing to the second ALJ decision, the plaintiff argues that the Appeals Council's remand order, as the Social Security Commissioner's official interpretation of Judge Gaughan's federal court remand, served to vacate the first "final decision" of the Commissioner (i.e. ALJ VerWiebe's

---

[5] The positions are categorized in the Dictionary of Occupational Titles. Dictionary of Occupational Titles, 4th Ed., rev. 1991; *see also* 20 C.F.R. § 404. 1566(c)-(d) (providing that the Social Security Administration will take notice of "reliable job information" available in the Dictionary of Occupational Titles).

opinion). (R. at 613. (Appeals Council remand order vacating the decision).); *see also* 20 C.F.R. § 404.983 ("When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may . . . remand the case to an administrative law judge with instructions to take action and issue a decision . . . ."). Because ALJ White felt that the district court's order limited him to deciding the issues Judge Gaughan specifically remanded – namely 1) the explanation and amount of weight "given to Dr. Young's opinion," and "the physical capacity evaluation showing Drossman can perform sedentary work and is 'functional class II'" and 2) "whether or not Drossman is disabled" – plaintiff argues that substantial evidence did not support ALJ White's decision. (R. at 566.)

After the first remand, ALJ White struggled with how he should follow: 1) Judge Gaughan's order, accepting in part and rejecting in part Magistrate Vecchiarelli's Report and Recommendation and 2) the Social Security Appeals Council's order, vacating the final decision of the Commissioner of Social Security and remanding this case to an ALJ. (R. at 563-66 (White's struggle); 610 (Gaughan's Order); 613 (Appeals Council's Order).)

In trying to assess how to analyze issues on remand, ALJ White looked to one of the few opinions on the issue, *Hollins v. Massanari*, 49 Fed. Appx. 533 (6th Cir. 2002), 2002 WL 31398968 (unpublished disposition). In *Hollins* the court noted that when district courts "include detailed instructions concerning the scope of the remand and the issues to be addressed" in a Social Security case "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Id.* at 536 (quoting *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989)). The court, however, went on to explain that this holding means that "the administrative law judge may not do anything expressly or impliedly in contradiction to the district

10

court's remand order" but that does not "preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion." *Id.*

Thus ALJ White's decision to limit himself "to the issues [the district court] found in question and not disturb the remainder of the court's decision affirming Judge VerWiebe," was an incorrect interpretation of the caselaw. (R. at 565.) It did not logically follow from the holding in *Hollins* because *Hollins* explicitly allowed ALJs receiving a case on remand to move beyond the issues examined in the district court opinion. *Hollins*, *supra*, 49 Fed. Appx. at 536; *cf.* 20 C.F.R. § 404.983 (explaining that "[w]hen a Federal court remands a case to the Commissioner for further consideration . . . . Any issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceeding leading to the final decision in your case"). Thus, an ALJ should not feel *constrained* to only consider the limited issues previously presented and specifically remanded for further consideration. (*See* R. at 825 ("I will have to assume that [plaintiff's counsel] raise those arguments and this court spoke directly to those, and specifically rejected those arguments.").)

This distinction is particularly applicable in the current case, in which Judge Gaughan refrained from granting remand as to some issues because she had already concluded that the plaintiff was entitled to remand regarding inconsistences in ALJ VerWiebe's decision (*See* R. at 610 ("Having concluded that plaintiff is entitled to remand as set forth above, the Court need not reach whether plaintiff is also entitled to a sentence six remand, as plaintiff sought this relief in the alternative.").)

Furthermore, it appears that the subsequent Appeals Council order vacating "the final decision of the Commissioner of Social Security [the VerWiebe decision]" and remanding for

11

further proceedings consistent with the court's order, served to undo all findings in the VerWiebe decision except for those on which the district court's holdings relied. (R. at 613.); *see Barry v. Sec'y of Health and Human Servs.*, 1988 WL 252040 at *2 (E.D. Mich.) (explaining that the Appeals Council vacated an earlier decision after a remand from the district court); 20 C.F.R. § 404.983 ("When a Federal court remands a case to the Commissioner for further consideration . . . . If the case is remanded to the Appeals Council, the procedures explained in 404.977 will be followed."); 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."). The only issues that *Hollins* precluded ALJ White from considering were those issues that Judge Gaughan definitely decided in her opinion – namely that plaintiff did not have manipulative limitations and that any failure on the part of the ALJ VanWiebe to properly consider plaintiff's labor market analysis was harmless error. (*See* R. at 608-09.)

### 4. Objections to the Magistrate's Report and Recommendation

In her objection to the Magistrate's Report, Drossman requests that I reverse the ALJ's decision to remand and provide an award instead. While I do have discretion to order reversal "with or without remanding the cause for rehearing," 42 U.S.C. § 405(g), I refrain from taking such action in this case.

I am not certain what caused both ALJs to come to the conclusion that Drossman can "perform unskilled one and two-step processes." (R. at 21 and 567.) Regardless, it undermines the Commissioner's ability to rely on the jobs cited by the VE in the first ALJ hearing. This does not, however, mean that there are no significant jobs in the economy that only require unskilled one- and two-step processes. If there are (or were) such jobs, the plaintiff may still be ineligible for benefits

for the time period in question. *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) ("If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.") Despite the undue time that has passed since the plaintiff first filed her claim for benefits, "all essential factual issues have not been resolved and there is no clear entitlement to benefits on the record as it now stands." *Id.* As such, it would be imprudent for me to reverse with an award rather than remand.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT

1. This case be reversed and remanded to the Commissioner for rehearing in accordance with this opinion;

2. Plaintiff's objections to the Report and Recommendation of the United States Magistrate Judge be, and the same hereby are, overruled.

So ordered.

>                    s/James G. Carr
>                    James G. Carr
>                    Chief Judge